I'm a CJA panel attorney from Pierce, SD, representing Jesse Waln in this case. Before I start my argument, I do want to make one correction to my brief. I realized in preparation that the U.S. v. LeChuga case was miscited. It should be 975 Fed 2nd 397. It's a Seventh Circuit case, not an Eighth Circuit case. I wanted to make sure I brought that to your attention. Jesse Waln was... They're good neighbors. Yes, thank you. Jesse Waln was charged with a seven-count indictment over three events that happened over a four or five-month time frame. On the eve of trial, Jesse went in and pled guilty to count one and count two of that indictment, which was a burglary and larceny of the Burnett case. He had maintained throughout preparation for the trial and through all the discovery that he was involved in that matter, but proceeded to trial on counts three, four, and five, which was a burglary and larceny of a neighboring house, the Westover home, and then also Keller Electric, which would have been a neighboring electric co-op that was in the area. He was found not guilty on those charges, but was found guilty on possession of stolen firearms. There was an allegation that there were 14 guns taken from the Westover home, and Jesse was charged and found guilty of possessing two of those. The two arguments in front of the court today are whether or not the court properly denied an emotion for acquittal or new trial, and then also an argument about the sentencing guidelines. In reference to count six, which was the Savage Rifle, the insufficiency argument was in reference to the evidence. There were two primary witnesses that testified in this regard. The first was Daniel Wideyes, who was the government cooperating witness, and she testified that she was with Wong when he sold guns or traded guns for methamphetamine to Mark O'Leary. She was not able to identify the guns. The indictment had specific guns and specific serial numbers on those guns. She wasn't able to identify or describe what guns that they were. Mark O'Leary had indicated to the court that he would not testify, that he would be pleading his Fifth Amendment right not to testify. So that causal step was missing, and the next part was that Settlemyer, the officer, retrieved some guns from Mark O'Leary. Mark O'Leary was not able to testify, and we weren't able to cross-examine him, and it wasn't until closing argument that the government said that Mark O'Leary is the one that said that he purchased them from Jesse. And so we believe that there's insufficient evidence on that count. There was an argument made on count six and seven in reference to, first, it was not allowing a lay witness to testify on inadmissible hearsay. This was brought up in a motion in Limney. Eventually the trial court allowed the witness to testify as an expert. There was not a Rule 16 notice provided in reference to that. The objections were, the record was supplemented prior to his testimony, and then also objections made during his testimony. I recognize that in the Shepard case and the Kenyon case, it's more difficult to prove prejudice, but these cases are distinguishable just based on the way that the issue came to the court procedurally. He did not make a determination on the procedural issues. I'm a little confused not having tried criminal cases. What difference it makes is whether this testimony was expert. The case, the Spite case law says that for an interstate nexus determination, that it should be expert testimony that is... Should be or must be. I believe... Investigation into what's really not scientific facts, whether there are scientific facts involved maybe and whether it's a firearm, but just the travel and commerce, I don't see the significance of the expert notice and so forth here. As a lay witness, he would have to testify on inadmissible hearsay, which would have  And so for him to be able to rely on... The gun is there, right? It's in evidence. Why can't he do that? It's right there. It's in evidence. That was why the motion in Limney was filed initially, is so that to make that determination. When the judge overruled that objection or overruled the admissible testimony, the gun was allowed into evidence, you were correct. But the case law, the Spite case says that it needs to be expert testimony or it's traditionally expert testimony that meets that nexus. The issue that I want to talk about is in reference to the guideline calculation range. Now in the pre-sentence report, which we believe accurately determined what the guideline sentence should be, the two offenses were grouped pursuant to 3D1.2 subsection D. The court ultimately determined that they should not be grouped and the reason that it matters is because under the grouping, he was allowed an acceptance of responsibility reduction for two points and without them being grouped, the acceptance of responsibility only applied to the first set account, the burglary and larceny and so at the sentencing, he didn't technically get credit for the acceptance of responsibility. I was a little confused on this argument because there's a reference in the briefs to the PSR recommending groupings of the Burnett and Westover burglaries. Of course, that's irrelevant to the way the case played out. He was acquitted of the Westover. The grouping now, the question now is Burnett and the firearms, right? That is correct. The government's ... I don't understand the argument as to where the ... Even if ... You want to group a pled count to two convicted counts in order to get the advantage of pleading guilty vis-a-vis acceptance for the counts that he didn't plead to, doesn't that ... If I've stated it correctly, it sounds pretty counterintuitive, doesn't it? The position that the government had taken all along is that this was one series of transactions that the burglaries were connected. If you're charged with drugs and firearms and you plead to the drugs and you go get convicted of the firearms, you don't get the advantage of the plea on the drugs in arguing for acceptance on the firearms, do you? That's the way that the pre-sentence report had ruled on three ... They weren't dealing with reality. I don't understand what's the relevance of the PSR. They would have grouped the burglaries, so what? The argument that the government made is that it was because he went in and pled to count one and two that it was no longer the same transaction, that it shouldn't be grouped. If they argued that, that's not the way I would argue it. For acceptance, the question is, did you put the government to its proof or not? That is correct. But the way that it was calculated is that he didn't get acceptance of responsibility. He did number-wise, but he didn't upon application because of the sentence. But isn't that the risk when you proceed to trial? The reality of it is this, is that the only way that we've ever ... Our precedent allows you to proceed to trial and then to get the benefit of acceptance is if you proceed to trial and you don't confess to any of the facts, that essentially you walk in and say, we agree with the facts as presented by the government. We deny that that's a crime. The facts as presented don't support intent, and so we're going to argue the specific intent and we're going to not contest any of the facts. That's generally where you get acceptance, even though you went to trial. Well, in this case, what you're really asking is us to use the grouping, to therefore give you acceptance, and then you're going to get credit for that acceptance for crimes that you actually contested, right? Right. And there isn't case law directly on point on this issue in the Eighth Circuit, which is why the Luchiga case is important, and it is a Seventh Circuit case. But that case stood for the proposition that if they should have been, or if they would have been included in the same trial, then they would still have been grouped. And so without evidence, or without case law in the Eighth Circuit, that was the closest thing that I could find to support what the pre-sentence writer initially done and what our argument was. But if you did group them, then you'd say no acceptance on the group offense. So what's the advantage of the grouping argument? Well, they did find that he had accepted responsibility.  Well, because he bifurcated the guidelines computations. If he groups, then it's one, right? Then he says, now was there an acceptance of responsibility for the overall conviction? And I dare say the trial court says no, put the government to its proof on the most serious offense. So have you played out the guidelines computations? What difference it would have made? I certainly have not. Well, yes. I mean, so under this argument, with it grouped, with the acceptance being claimed at the end, it would have been a level 21, which- But if there's no acceptance at the end, how does it compare? Is it a wash with the way that the district court calculated the range? It would have been at a 23, with no acceptance of responsibility, yeah. Well, because I guess if we agreed with the grouping argument, we'd have to remand to determine whether acceptance was appropriate for the grouped offenses, wouldn't we? Correct, because that wasn't an issue that the court looked at. Okay, so that's your- Yep. That's your- No, that- Now, on the minimal testimony on count six, I don't quite understand why the combination of, is it White Eagle and West- White, Daniel White Eyes. The two witnesses, I don't understand why in tandem they don't provide sufficient evidence. I know you say that he has to go by hearsay. Actually you confused me, because you may, the brief confused me, because there was a, the defendant kept the jury from hearing O'Leary's hearsay to Settlemire, if that's how you pronounce it, until the government's prejudicial closing argument, but there was no prejudicial argument issue raised. So what's the, how does that relate, relate that to your insufficiency argument? Sure. That Daniel White Eyes testified that she was with Markle, or with Jesse Wall when he sold the guns to Markle Leary. So there's, right. And so then Settlemire testified that he went to Markle Leary and he got these two guns, but he wasn't able to testify. The judge allowed a motion in Lindley that said that he couldn't testify that Markle Leary told him that he sold the guns to, I'm sorry, that Markle Leary couldn't, or that Settlemire couldn't testify that Markle Leary told him that he bought the guns from Jesse Wall. So that was the position that was, or the causal link that was missing until the closing argument where the government had made that statement that Settlemire said that Markle Leary. It's not an issue on appeal. Correct. Issue of insufficiency. Yes. So the question I gather is whether you can parse together from the defendant's testimony and all this stuff about the shelter belt and whatnot, whether that's enough to link the Savage rifle to the transaction with the Leary. Correct, Your Honor. Yes. Thank you. It's all an inferential argument at that point, right? Could the jury have drawn a reasonable inference from those, the facts, the shelter belt, where the guns were found, how the guns were, where they were, how the guns were ultimately taken back? Correct, Your Honor. And that, and that the argument just added a fact that was not in evidence and it's not before us. Correct, Your Honor. Okay. If there's no further questions, I will reserve the rest of my time. Thank you. Dr. Colander. Thank you, Your Honor. May it please the court. Counsel? I'm Kevin Colander from the U.S. Attorney's Office in South Dakota arguing on behalf of the government. I will address the last argument that was, or the last discussion first on the sufficiency regarding the Savage firearm. There's a lot of facts here that were talked about in this trial. What we have here is a group of daily meth addicts engaging in burglaries around the Rosebud Reservation and then engaging in all these actions in the weeks that followed to sell these firearms and then law enforcement trying to piece it together and then a trial piecing all these facts together. Here's what the jury heard. Bo Westover came home from a camping trip with his family over the Veterans Day weekend and reported that his house had been ransacked and a number of guns had been stolen, including the Savage firearm at issue in this appeal. The jury then learned from Danielle White-Eyes that on November 11th, 2016, she and Jesse Waln went to an alley behind the house of Bo Westover and helped Jesse Waln's brother load in a bunch of items that Jesse Waln later admitted both to law enforcement and to the jury that he knew they were stolen. You don't have to repeat all the facts for me, but is the, does the government, was the government theory that the Savage was one of the two guns that he sold to O'Leary? Yes. Absolutely. Okay. So if that wasn't proved, that it failed, the count six fails? Well, it, yes, in a sense it does. But there were a number of inferences that that was in fact the gun that'll, there's direct test. You just described about, about helping load the guns, even if he wasn't a Westover burglar, after the fact he, he, he messes and helps distribute stolen firearms, but that wasn't the theory. The theory was it had to be the Savage 204 that he sold or traded to O'Leary. Well, the chain that gets it to, from the Bo Westover house to Mark O'Leary includes, you know, this long string of, of somewhat convoluted facts here, but what we have then is we have a number of admissions that Jesse Waln was involved in the things stolen, including guns from the Westover house. One of the things that Daniel White Eyes talked about was a trip to this Mark O'Leary's and she said they went with two guns and it's true. She didn't know the make and model of the guns. They went to get meth, Jesse Waln went in, he came back without the guns and he came back with meth. Then taking that information, Bob Settlemire, the investigating officer went and found Mark O'Leary. The testimony was that he found him at a casino at one o'clock in the morning and said, Mark, you know, you may have bought some stolen guns. And Mark says, I don't want anything to do with stolen guns. Yes it is. There were some objections, but that, that testimony came in. I think, I believe they were hearsay objections during, during the trial testimony. Arguably. Yes. And well, the way the questions were posed were largely about, did you have a conversation with Mark O'Leary? In part to certain questions, there were sustained objections. I'm only talking about the part of the testimony where there weren't sustained objections. There was a sustained objection ultimately when the government asked, did he say where he got the guns from? Objection sustained. The government did ask a question with a objection that wasn't, with no objection. The question quoting, did you talk with Mark O'Leary about guns he may have purchased from Jesse Waln? Answer, yes. No objection to that question. As a result, the question was asked to the, the agent, did you receive two guns from Mark O'Leary? Yes. And one of them was a Savage firearm. So a number of inferences there. But no question that the Savage firearm was Bo Westover's firearm. No question that the trace report from the ATF agent showed that that was originally sold to Bo Westover, and that was in fact the gun that was retrieved by Agent Settlemire from Mark O'Leary. Going to the Rule 16 question, this court has decided these issues in a number of prior cases. In, we have cited the Kenyon case and also the Shepard case. Both of those stand for the notion that failure to file a Rule 16 motion does not necessarily make an agent's expert testimony inadmissible. The reversible error is when there has been prejudice shown by the defendant. And there has been no showing of prejudice here. The district court in this case, when this issue was argued, looked at the very issues that this, the, the very notions that this court has looked to in those cases, asking the questions, well, was this sort of information given to the defense in advance? It turns out this trace report was given to the defense over a year before the trial began. This witness was on the government's witness list. In fact, the only involvement this ATF agent had in this case was doing the trace report. In a certain respect, the presence of emotion and liminy about this, it cuts against the defense argument in the sense that they clearly knew that that was the purpose that this agent was going to be called to testify even before trial. And again, there has been no showing. So that's the, that's an issue that's been decided in the Kenyon and the Shepard case. To the extent the argument is that this was inadmissible hearsay, this court has also decided that question directly in USV Carter. Now, that's a case that's not cited in the government's brief. It is cited with approval in the Spite case that's discussed. Spite dealt with the foundation objection to an ATF trace report. USV Carter is 270 F 3rd 731, and that's a case in which this court held that it's not hearsay in the sense that an expert can rely upon hearsay statements, such as a stamp on a gun, if that's considered to be hearsay. Turning to the guidelines issue. The argument is that's why it had to be an expert, it had to be expert testimony in it. And I, this is one of these issues that should it have been put forward in a formal rule 16 notice. The district court thought so, told the government council that. And we're not disputing that no rule 16 notice was made here. It's not a customary practice in my office, but it happened in this case. And so then the question is, well, what's the standard of review of allowing that in? And again, it goes back to this prejudice point. Turning to the guidelines issue, the question that the court has grappled with today with respect to what's the result of this grouping, that was exactly what the district court was talking about when it talked about how it was struck with kind of an oddity in calculating the guidelines here. Also exactly why the government made an objection to the PSR author's calculation. And it was because by grouping these accounts, these two counts together, or sorry, these four counts together, in effect, he would have gotten a benefit for acceptance of responsibility on two counts that he proceeded to trial with. I believe the, it was a- Put it in range terms. What's the difference? The difference in the bottom line range with the two ways of calculating. I just heard you say if it had been grouped, he'd have gotten acceptance. He would have gotten acceptance applied to his trial counts as well. One point difference in the offense level. It's even complicated further because there was an argument about whether a prior criminal history point should have counted if the offenses were grouped or not grouped because it fell before a time period. So it would have taken him from a two to the three. But in terms of the offense levels, I believe the government was arguing for a high end of 78 months on the guideline range. Whereas the way the court came out, I believe, put it at a 57 to 71 month range. What was the alternative range? I believe the high end was 78 months. I don't know what the low end was. And that takes into account both the. I missed the first. I thought you gave the more favorable range for it. What were the two ranges? The one level difference. 57 to 71 months, I think is right. That was the sentencing range or that's what it would have been? The guideline range with, if viewed together, if grouped together. And what was it? What is the range where it's on appeal? He reduced it to a criminal history category two and combined 51 to 63 months, I believe, if it were combined. On appeal, he- 70 months sentenced. Was that a variant? Was it with a variance? Was there a variance? He ran consecutive, a part of it. So, neither of the two- He had to have made a sentencing, a range. He had to find an advisory guidelines range for the- Sorry. Before closing 70 months. What was it? I didn't get that from the- Because he ultimately ran them separately and consecutive. For the burglary counts, the range was 24 to 30 months. For the firearms counts, 46 to 57 months. Because he ran them consecutively, calculated the ranges separately. He didn't- And then what he did is he ran 13 months consecutive to reach the 70 months range. Your Honor, here's where I'm going with this. What you have here is a district court who made a very extensive 3553 analysis announcing, even before he made that- Give me the firearm ranges as the court did it. 46 to 57 months, if that were on its own. Burglary range, if on its own, 24 to 30 months. And then he made them consecutive? He made a portion consecutive, 13 months consecutive. And here's why he did that and why he explained why he did that. He said throughout the sentencing that he thought the total punishment here should be 70 months. We have this oddity in the guidelines with how things are calculated. The district court stated on the record that that's where he was going and then did an extensive 3553 analysis. Talking all about the nature and circumstances, going through all the factors. In fact, for several pages of the sentencing transcript talking about why 70 months is an appropriate sentence. This is a case where the district court made an extensive record that even regardless of the guideline range, he would have reached the same sentence under the 3553 factors. In other words, if there had been error here, it would be harmless. We cited the Ortiz case and the Shuler case from this court for that proposition. So to Judge Loken, your question to opposing counsel, if the guideline range is wrong, do we have to remand? And I think the answer is no, because if there had been error, it would be harmless. I have a minute and a half, or a little over a minute left on the clock here. If there are any questions, I'd be happy to answer them. If not, I'll take my seat. I hate to do this because I'm still confused. Had they been grouped, there would have been a 57 to 71 guideline range. Is that what you're saying? I think it would have, I'm sorry. Or was it 63 to 78? because I know you were talking about 63 to 78 at one point. That was what you were arguing for at the high end of that range. And then there was a, you said they were at 70, well the grid actually goes to 71. So it must have been 57 to 71 if grouped. Yep, okay. And the government was asking in their argument that they shouldn't be grouped and it should be up to a 78. That's the sentence they- 63, 78, and the judge said 70 months, everybody go away? Yes, essentially. Thank you. And they would have found that no matter what, right? Yes, absolutely, and that's very clear from the sentencing record. Thank you. Rebel. Thank you, your honors. Just to make it clear what I'm requesting is that I believe that they should have been grouped and without giving up my argument on the obstruction of justice enhancement, it would have been a level 21 at 41 to 51 months. And what the court did on counts one and two, he found the range of 46 to 57 months, and then he ran them consecutively to get to that 70 month time frame. So what I'm arguing is that it should have been a level 21. Thank you. Thank you, counsel. Case has been helpfully argued and well briefed. We'll take it under advisement.